IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AUTUMN C. BURKHART,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,<br><br>Defendant. | Civil Action No. 13-238J |

## MEMORANDUM AND ORDER OF COURT

AND NOW, this 31st day of March, 2015, upon due consideration of the parties' cross-motions for summary judgment relating to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for supplemental security income under Title XVI, of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 14) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 11) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff protectively filed her pending application for supplemental security income on July 12, 2010, alleging a disability onset date of March 1, 2010, due to, *inter alia*, migraine headaches, back pain and mental impairments, including borderline intellectual functioning, depression and anxiety. Plaintiff's application was denied initially. At plaintiff's request an ALJ held a hearing on July 2, 2012, at which plaintiff, represented by counsel, appeared and testified. On August 9, 2012, the ALJ issued a decision finding that plaintiff is not disabled. On August 21, 2013, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 27 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §416.963(c). She has a limited education. 20 C.F.R. §416.964(b)(3). She also has no past relevant work experience and has not engaged in any substantial gainful activity since her alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although the medical evidence establishes that plaintiff suffers from the severe impairments of cervical spondylosis, L5 bilateral pars defect spondylolithesis, migraine headaches, seizure disorder, pelvic inflammatory disease, borderline intellectual functioning, depression, generalized anxiety disorder, post-traumatic stress disorder and personality disorder, those impairments, alone or in combination, do not meet or equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

The ALJ also found that plaintiff retains the residual functional capacity to engage in work at the light exertional level but with numerous restrictions necessary to accommodate her

physical and mental impairments. (R. 18).[1] Taking into account these restrictions, a vocational expert identified numerous categories of jobs which plaintiff can perform based upon her age, education, work experience and residual functional capacity, including entry level solderer, jewelry stringer and small electric equipment inspector. Relying on the vocational expert's testimony, the ALJ found that plaintiff is capable of making an adjustment to numerous jobs existing in significant numbers in the national economy. Accordingly, the ALJ concluded that plaintiff is not disabled under the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability.[2] 20 C.F.R.

---

[1] Specifically, the ALJ found that plaintiff has the residual functional capacity to perform light work except "she is limited to occasional climbing ramps and stairs, bending, balancing, stooping, kneeling, crouching and crawling, no climbing ladders, ropes or scaffolds, no exposure to extreme heat or cold, vibration, street level noise, bright lights, computers, unprotected heights, dangerous machinery, and uneven surfaces, is limited to simple, routine tasks involving no more than simple, short instructions and simple work-related decisions with few workplace changes (unskilled work), no work at production rate pace, and occasional interaction with the public, co-workers and supervisors." (R. 18).

[2] The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past-relevant work; and, (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of her age, education, work experience, and residual functional capacity. 20 C.F.R. §416.920; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). In addition, when there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations. Plummer, 186 F.2d at 432; 20 C.F.R. §416.920a.

§416.920. If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

Here, plaintiff essentially raises two challenges to the ALJ's determination that plaintiff is not disabled: (1) the ALJ failed to address adequately the impact of plaintiff's migraine headaches on her ability to work; (2) the ALJ failed to address adequately plaintiff's cognitive deficits and her worsening symptoms of depression and anxiety. Upon review, the court is satisfied that the ALJ properly evaluated the evidence and that all of his findings are supported by substantial evidence.

Plaintiff first takes issue with the ALJ's evaluation of the evidence relating to her migraine headaches. Plaintiff contends that the ALJ failed to assess the impact of plaintiff's headaches in assessing her residual functional capacity. She also argues that the ALJ failed to resolve a conflict between the opinion of the state agency reviewing physician and the opinion of her treating physician's assistant as to limitations arising from her migraines. Finally, she argues that the ALJ failed to consider the worsening of her migraines following an automobile accident on August 19, 2011. Upon review, the court finds no error in the ALJ's evaluation of plaintiff's migraines or their impact on her ability to work.

Initially, contrary to plaintiff's assertion that the ALJ's decision contains "no description of plaintiff's history of treatment for migraines or the extent to which her symptoms from her migraines impact her ability to work," it is clear from the ALJ's decision that he in fact did expressly consider plaintiff's migraine headaches and that he adequately accounted for any limitations arising from them in his residual functional capacity assessment. He began by acknowledging that plaintiff was alleging disability, *inter alia*, due to her back problems and migraine headaches and that she was contending that those impairments caused her limitations

AO 72
(Rev. 8/82)

in lifting, postural maneuvering, completing tasks, concentration and getting along with others to such an extent as to render her incapable of working. (R. 19). The ALJ then explained his determination that although plaintiff's back problems and migraines were severe impairments, and could be expected to cause her symptoms, her allegations as to the intensity, persistence and limiting effects of those symptoms were not credible to the extent that she was alleging they were completely debilitating. (R. 19).

In doing so, the ALJ discussed the relevant medical evidence regarding her back problems and migraines, pointing out that the diagnostic studies showed only "mild" to "moderate" findings. (R. 19-20). He also noted that the state agency reviewing physician, Dr. Dilip Kar, had determined that plaintiff is capable of performing work at the light exertional level, (R. 500-506), a conclusion which the ALJ found to be consistent with the evidence in the record.[3] (R. 21). In addition, the ALJ's residual functional capacity finding clearly accommodates any limitations arising from plaintiff's migraines by limiting plaintiff, *inter alia*, to jobs that require no exposure to vibration, street level noise, bright lights, or computers, as well as limiting her to simple, routine tasks involving no more than simple, short instructions in order to account for any concentration difficulties that might arise from plaintiff's headaches. (R. 18). The court is satisfied that the ALJ adequately considered plaintiff's migraines and incorporated all limitations arising from that impairment in the residual functional capacity finding.

---

[3] Pursuant to the Regulations, state agency medical consultants are considered to be "highly qualified physicians ... who are also experts in Social Security disability evaluation." 20 C.F.R. §416.927(e)(2)(i). Accordingly, while not bound by findings made by reviewing physicians, the ALJ is to consider those findings as opinion evidence, and is to evaluate them under the same standards as all other medical opinion evidence. 20 C.F.R. §416.927(e)(2)(ii); SSR 96-6p.

Plaintiff also contends that the ALJ violated SSR 06-03p[4] because he "never referenced" the opinion of her treating physician's assistant, Melissa Leonardis, who suggested a large number of limitations resulting from plaintiff's migraines. (R. 888-893). This contention also is belied by the record. The ALJ explicitly addressed Ms. Leonardis's opinion in the decision, acknowledging all of the alleged limitations suggested in that opinion but explaining why he was giving that opinion "little weight." (R. 21). In particular, he noted that Ms. Leonardis's opinion is inconsistent with the totality of the evidence, including the diagnostic studies showing only mild to moderate findings, (R. 21), as well as with the opinion of plaintiff's treating neurologist, Dr. Zafar Chowdhry, who opined that he "would not place [plaintiff] on disability" as of August of 2011. (R. 793).

Finally, contrary to plaintiff's remaining contention, the ALJ also considered the effect of plaintiff's automobile accident on August 19, 2011, on her migraine headaches. The ALJ acknowledged plaintiff's allegations that her migraines worsened after the accident, but pointed out that an MRI of the cervical spine after the accident revealed only "mild" degenerative changes, and that the other diagnostic studies following the accident otherwise were normal. (R. 20). The record evidence related to plaintiff's automobile accident supports the ALJ's conclusion. (R. 833-843). Accordingly, the court is satisfied that the ALJ's evaluation of plaintiff's migraine headaches is supported by substantial evidence.

Plaintiff's second argument is that the ALJ failed to address adequately plaintiff's cognitive deficits. In this regard, plaintiff contends that the ALJ improperly rejected IQ scores

---

[4] SSR 06-03p addresses opinions from sources who are not "acceptable medical sources" under the regulations. Pursuant to SSR 06-03p, while physician assistants are not "acceptable medical sources," they are considered "other sources" who "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." Accordingly, opinions from such other sources "are important and should be evaluated on key issues such as impairment severity and functional effects." In this case, the ALJ considered Ms. Leonardis' opinion and evaluated it in accordance with SSR 06-03p.

reported by Dr. Dennis Kashurba in 2006 and instead relied on IQ scores recorded in a 2008 report that was not part of the record. She further contends that the record otherwise is insufficient to determine the impact of her cognitive deficits on her ability to work. Finally, as she did in regard to her migraines, plaintiff argues again that the ALJ failed to consider the impact of her August 19, 2011, automobile accident on the worsening of her symptoms of anxiety and depression, and that the ALJ improperly relied on the assessment of the state agency reviewing psychologist whose opinion was rendered before the accident and therefore was not based on the entire record.

Initially, it is clear from the ALJ's decision that he considered plaintiff's "cognitive deficits" and adequately accommodated any limitations arising therefrom in his residual functional capacity finding. As already noted, when there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations. Plummer, 186 F.2d at 432; 20 C.F.R. §416.920a. The ALJ did so here. The ALJ found that plaintiff suffers from a number of severe mental impairments, including, *inter alia*, borderline intellectual functioning, depression and anxiety, and that he properly analyzed those severe impairments at step 3 and then again at step 5 in assessing plaintiff's residual functional capacity. In order to accommodate the limiting effects of plaintiff's mental impairments, the ALJ restricted plaintiff to "simple, routine tasks involving no more than simple, short instructions and simple work-related decisions with few workplace changes (unskilled work), no work at production rate pace, and occasional interaction with the public, co-workers and supervisors." (R. 18). The court finds no error in the ALJ's analysis of plaintiff's "cognitive deficits."

In analyzing plaintiff's borderline intellectual functioning at both step 3 and in assessing plaintiff's residual functional capacity, the ALJ acknowledged that Dr. Kashurba administered an IQ test in August of 2006, which resulted in a verbal IQ score of 76, a performance IQ score of 66 and a full scale IQ score of 69, (R. 1029), scores that would place plaintiff in the range of mild mental retardation rather than borderline intellectual functioning. Plaintiff argues that the ALJ improperly rejected these scores in favor of IQ scores reported in the assessment of the state agency reviewing psychologist, Dr. James Vizza, from a consultative examination conducted by Dr. Charles Kennedy in March of 2008 during proceedings on a prior unsuccessful application for benefits filed by plaintiff. The March 2008 IQ test resulted in a verbal IQ of 75, a performance IQ of 77 and a full scale IQ of 74, placing plaintiff squarely in the borderline intellectual functioning range. The court finds no error in the ALJ's rejection of the IQ scores reported by Dr. Kashurba.

It is well-settled that an ALJ is not required to accept a claimant's IQ scores and may reject scores that are inconsistent with the record. Markle v. Barnhart, 324 F.3d 182, 186 (3d Cir. 2003). Here, the ALJ expressly acknowledged the 2006 IQ scores and adequately explained why he did not accept them as valid. (R. 18; 21). Specifically, the ALJ gave the 2006 scores little weight because they were inconsistent with the totality of the evidence, including plaintiff's daily activities as well as the IQ scores recorded in March of 2008. (R. 18; 21).

The court is satisfied that the ALJ's conclusion is supported by substantial evidence in the record. In determining whether an IQ score is valid, *i.e.*, an accurate reflection of a claimant's intellectual abilities, the ALJ is to consider the entire record before him. Markle, 324 F.3d at 186. "[T]est results may be deemed invalid where the IQ scores are inconsistent

AO 72
(Rev. 8/82)

with the claimant's prior educational or work history, daily activities, behavior or other aspects of his or her life." Manigault v. Astrue, 2009 WL 1181253 (W.D. Pa. 2009)(J. Standish).

Here, it is clear that the ALJ considered the entire record and determined that the IQ scores of below 70 were inconsistent with the other evidence. First, it is important to note that plaintiff never has been diagnosed even with mild mental retardation, not even by Dr. Kashurba, who administered the 2006 test and diagnosed plaintiff with borderline intellectual functioning, (R 1035), suggesting that despite the IQ scores in the 60's he himself did not believe that plaintiff is mentally retarded. Manigault, 2009 WL 1181253 at *9 (psychologist who diagnosed claimant with borderline intellectual functioning rather then mild mental retardation, despite IQ scores in the 61-70 range, implicitly found scores to be invalid.)

Moreover, as noted by the ALJ, the 2009 results varied from the only other IQ results contained in the record, those reported by Dr. Vizza from Dr. Kennedy's 2008 assessment. Plaintiff argues that the ALJ improperly relied on the 2008 IQ scores because Dr. Kennedy's full report is not a part of the record. In essence, she is requesting a remand so that she can review the full report and challenge it before the ALJ. The court finds that a remand for this reason is not warranted.

Generally, a district court's determination of whether to remand to the Commissioner for consideration of evidence that was not before the ALJ is governed by Sentence 6 of §405(g) of the Act. See Matthews v. Apfel, 239 F.3d 589, 593 (3d Cir. 2001). Sentence 6 permits remand "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." See also Szubak v. Secretary of Health & Human Services, 745 F.2d 831, 833 (3d Cir. 1984).

AO 72
(Rev. 8/82)

"[A] claimant must satisfy all three requirements of Sentence 6 (new, material and good cause) in order to justify a remand." Matthews at 594; Szubak at 833.

Here, plaintiff can meet none of the requirements. In order to support a sentence 6 remand, "the evidence must first be 'new' and not merely cumulative of what already is in the record." Szubak, 745 F.2d at 833. "Evidence is new if it was not and could not have been presented at the prior administrative proceeding." DeMoss v. Heckler, 706 F.Supp. 303, 308 (D.Del. 1988). Here, Dr. Kennedy's full report was prepared in March of 2008 and there is no reason plaintiff could not have requested that it be made a part of the record before the ALJ. As the Commissioner notes, plaintiff was aware that Dr. Vizza's report referenced Dr. Kennedy's IQ scores, and if she had wanted to challenge those scores she could have requested that the full report be provided in order for her to do so. However, when the ALJ asked counsel at the hearing if he had any objections to any of the exhibits, he indicated that he had none. (R. 34).

Secondly, plaintiff cannot show that the full report is material, *i.e.*, that there is a reasonable probability that the evidence would have changed the outcome of the disability determination. Szubak, 745 F.2d at 833. In this regard, the court notes that the ALJ did not rely on Dr. Kennedy's report itself, but merely observed the IQ scores recorded in that report and then determined that those scores were more consistent with the totality of the evidence than the scores reported by Dr. Kashurba in 2006. As already discussed, the ALJ's determination that the 2008 scores were more consistent with the evidence as a whole than the 2006 scores is supported by substantial evidence in the record, including the fact that Dr. Kashurba himself diagnosed plaintiff with borderline intellectual functioning and not mild mental retardation, implicitly determining that the 2006 scores were not entirely valid.

AO 72
(Rev. 8/82)

Finally, there is no good cause for plaintiff not having requested that the full report be provided for her review during the administrative proceeding. If plaintiff believed, as she now speculates, that there is something in the report which would allow her to ascertain whether Dr. Kennedy "made other findings that might establish disability" or to determine whether Dr. Kennedy's "findings are an accurate reflection of her ability to function" it was her responsibility to obtain it, review it, and challenge it before the ALJ. *See* 20 C.F.R. §912(a) ("you must bring to our attention everything that shows that you are ... disabled"). Again, it is important to note that the ALJ did *not* rely on Dr. Kennedy's full report, or use it to establish that plaintiff is not disabled, or even consider it in any way other than merely to observe that the raw IQ scores recorded in that report were more consistent with the totality of the evidence than Dr. Kashurba's.

Plaintiff's counsel was provided the opportunity to object to Dr. Vizza's report if he disagreed with the IQ scores reported therein, but he did not do so. Although plaintiff's counsel now argues that he did not have access to the report because his firm did not represent plaintiff during the proceedings on plaintiff's prior unsuccessful application, that is not good cause for a sentence 6 remand. *See* DeMoss v. Heckler, 706 F.Supp. 303, 309 (D.Del. 1988)("one purpose of good cause requirement is to prevent the claimant from another 'bite at the apple'"). The fact remains that plaintiff and her counsel were aware that Dr. Vizza's report referenced prior IQ scores from Dr. Kennedy and they did not object to those scores at that time nor request that Dr. Kennedy's full report be provided for their review. Accordingly, the court does not believe that a remand is appropriate to give plaintiff a second chance to challenge those IQ scores, or any other finding contained in Dr. Kennedy's full report, which was not part of the record below and was not considered by the ALJ for any other purpose.

To the extent that plaintiff alleges that the record otherwise is deficient to allow a determination of the impact of plaintiff's cognitive deficits on her ability to work, the court notes that Dr. Vizza acknowledged plaintiff's diagnosis of borderline intellectual functioning and assessed plaintiff's mental residual functional capacity in light of that diagnosis. (R. 507-509). The ALJ gave some weight to the assessment of Dr. Vizza in assessing plaintiff's residual functional capacity and actually incorporated greater restrictions to accommodate plaintiff's cognitive deficits. The court is satisfied that the ALJ's evaluation of plaintiff's cognitive deficits is supported by substantial evidence.

Plaintiff's final contention is that the ALJ improperly relied on Dr. Vizza's assessment because it was issued prior to plaintiff's automobile accident in August of 2011 and did not account for plaintiff's worsening anxiety and depression after the accident.

First, to the extent plaintiff argues that the ALJ could not rely on Dr. Vizza's report because it was not based on the full record, that argument is without merit. The Third Circuit Court of Appeals has rejected the argument that the mere lapse of time between a state agency physician's review of the record and the subsequent administrative hearing makes it improper for the ALJ to rely on the opinion. See Chandler v. Commissioner of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) (recognizing that "[the Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it"). Rather, it is for the ALJ to determine whether subsequent medical evidence impacts the earlier findings. Id. (citing SSR 96-6p).

Here, it is clear that the ALJ considered all of the medical evidence, including the evidence from after plaintiff's automobile accident, but determined that the subsequent medical evidence did not alter Dr. Vizza's assessment that plaintiff does not have more than moderate

limitations from her mental health impairments. (R. 21). The record supports this conclusion, as a treatment note from plaintiff's treating physician's assistant indicates that as of November of 2011, plaintiff reported that "she has recovered mentally," that "she is able to recall short and long term memory and no confusion" and that she "is alert and oriented times three today." (R. 853). Accordingly, because the record as a whole does not support any additional limitations due to "worsening" depression and anxiety after plaintiff's automobile accident, the ALJ did not err in relying on Dr. Vizza's opinion.

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

s/Gustave Diamond<br>
Gustave Diamond<br>
United States District Judge

cc: Kenneth R. Hiller, Esq.
Law Offices of Kenneth Hiller PLLC
6000 North Bailey Avenue, Ste. 1A
Amherst, NY 14226

John J. Valkovci, Jr.
Assistant U.S. Attorney
200 Penn Traffic Building
319 Washington Street
Johnstown, PA 15901